UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JACK FISCHER,

                              Plaintiff,

               -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
MELISSA SILBERMAN, and AUGUSTUS LABELLA,
*in their individual and official capacities,*

                          Defendants.

-------------------------------------------------------------------X

**AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiff, JACK FISCHER, by and through his attorneys, LEEDS MORELLI &

BROWN, P.C., alleges upon knowledge as to himself and his own actions, and upon

information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1.     This action arises under The Family Medical Leave Act of 1993, 29 U.S.C.

        §2611, *et seq.*; the New York State Executive Law, Human Rights Law, Section

        290 *et seq.*; the New York City Human Rights Law; and any other cause of action

        which can be inferred from the facts set forth herein.

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. Pendent

        jurisdiction of the Court is invoked under 28 U.S.C. §1367 over the state law

        causes of action.

3.    Venue is proper pursuant to 28 U.S.C. §1391.

## PARTIES

4.    Plaintiff, Jack Fischer, ("Fischer"), lives in Baldwin, New York.

5.    Defendant, New York City Department of Education ("DOE"), is located at 65
      Court Street, Brooklyn, New York 11201. The DOE is an agency of the City of
      New York, responsible for the operation of Automotive High School, K610
      ("K610"), which is a public school located at 50 Bedford Avenue, Brooklyn, New
      York 11222.

6.    Defendant, Melissa Silberman ("Silberman") is the Principal of K610. As
      Principal of K610, she works at 50 Bedford Avenue, Brooklyn, New York 11222.

7.    Defendant, Augustus Labella ("Labella") is an Assistant Principal of K610. As
      Assistant Principal of K610, he works at 50 Bedford Avenue Brooklyn, New
      York 11222.

8.    Defendants Silberman and Labella were and are Plaintiff's supervisors, and
      therefore, were and are responsible for, *inter alia*, the supervision of employees,
      including Plaintiff. Additionally, said Defendants are policymakers for K610,
      charged with the responsibility of insuring that employees were not subjected to

2

unlawful discrimination, retaliation or harassment. They are also responsible for

properly training and supervising employees with respect to employment issues.

## BACKGROUND FACTS

9.     In September 1980, Plaintiff commenced working as a teacher for the DOE.

10.    In or around September 1994, Plaintiff commenced working at K610 as a teacher.

11.    In 1995, Plaintiff was diagnosed with multiple sclerosis ("MS"). This disability
       substantially limits one or more of Plaintiff's life activities.

12.    In 1997, Plaintiff suffered his first MS attack. Thereafter, Plaintiff commenced
       treatment that includes a regular regimen of immune therapy.

13.    On September 28, 1999, Plaintiff informed K610's principal and assistant
       principal, Labella, of his diagnosis of MS, showed them his Nassau County
       Handicap Parking Permit, and requested a handicap parking spot in K610's
       parking lot. In addition, Plaintiff requested an early teaching schedule because
       one of the side effects of MS is fatigue, which worsens as the day progresses.

14.    Though Plaintiff's request for a handicap parking spot was eventually granted, his
       request for an early teaching schedule was denied.

3

15.    In or around September 8, 2000, Plaintiff asked the principal if he could be
       assigned to a cooler classroom because of his MS related heat intolerance.  In
       addition, Plaintiff requested an early teaching schedule. The principal denied both
       of Plaintiff's requests.

16.    By letter dated September 27, 2000, Plaintiff wrote to the DOE requesting an
       early teaching schedule, and a cooler classroom.  In this letter, Plaintiff explained
       that these requests were previously submitted to K610's principal, she denied
       them, and she referred to his MS as "alleged."

17.    Despite repeatedly complaining about the heat in his classroom on an almost daily
       basis starting in September 2000 up to and including the present, Plaintiff's
       multiple requests for an air conditioned room on the first floor have consistently
       been denied.  Additionally, Plaintiff's wife has occasionally requested, on behalf
       of her husband, these same reasonable accommodations.  These requests have
       also been denied.

18.    In October 2000, the principal ordered Plaintiff to have a medical examination.
       The medical examination found Plaintiff to be fit to work.  Upon receiving the
       results of the medical exam, Plaintiff was not permitted to return to K610.  In an
       effort to harass Plaintiff, the principal informed him that he was not allowed to
       return to work because the building was not handicap accessible.

4

19.   By letter dated February 21, 2001, the DOE formally denied Plaintiff's requests
for reasonable accommodations, stating that the requests were not medically
warranted. Once this formal denial was issued, Plaintiff was allowed to return to
K610.

20.   In September 2002, Plaintiff complained about the heat in his classroom to
Labella. Shortly thereafter, on September 19, 2002, Plaintiff fainted during class.

21.   By letter dated September 23, 2002, Plaintiff submitted to the principal a request
for an early teaching schedule and an air conditioned classroom. In this letter,
Plaintiff explained that his fainting on September 19, 2002 was a result of his later
teaching schedule, and the excessive heat and humidity in his classroom. Plaintiff
further stated that he had requested these same reasonable accommodations for
the past two years.

22.   Beginning in October 2002, Plaintiff was occasionally assigned a paraprofessional
who would assist Plaintiff with classroom duties, such as passing out papers to
students. Since then, Plaintiff has been assigned a paraprofessional infrequently,
and his requests for a paraprofessional for every class have been denied.

23.   On October 8, 2002, the principal requested that Plaintiff again be medically
evaluated to determine his fitness for work.

24.     Based on the aforementioned incidents, in October 2002, Plaintiff filed a charge
        of employment discrimination with the EEOC.

25.     In November 2002, Defendants assigned Plaintiff to a different classroom and
        provided him with an early teaching schedule.  The new classroom, however, was
        not any cooler than his previous room.

26.     In January 2003, Plaintiff was assigned a late teaching schedule despite requesting
        an early one as an accommodation.  Approximately one month later, Plaintiff was
        granted an early teaching schedule.

27.     In February 2003, Plaintiff withdrew his EEOC charge against the DOE because
        Plaintiff was granted an early teaching schedule, which was his chief concern at
        the time.  Additionally, based on the statements and actions of K610's
        administration, Plaintiff believed that he would be assigned to a cooler classroom.
        However, Plaintiff was never assigned to a cooler classroom, and his request for
        an air conditioned classroom on the first floor has consistently been denied.

28.     In January 2004, Plaintiff was assigned a late teaching schedule despite requesting
        an early one to accommodate his disability.  Plaintiff filed a grievance in
        connection with this assignment.  Approximately one month later, Plaintiff was
        granted an early teaching schedule.

29.   In September 2004, Plaintiff was again assigned a late teaching schedule.
Plaintiff wrote the new principal, Ms. Melissa Silberman ("Silberman"),
requesting the earliest teaching schedule. Approximately one month later,
Plaintiff was granted an early teaching schedule.

30.   On January 26, 2005, Plaintiff reiterated his request for an early teaching schedule
to Labella. Approximately one month later, Plaintiff was granted an early
teaching schedule.

31.   On April 11, 12, and 13, 2005, Plaintiff was absent from work due to an acute
vertigo attack related to his MS.

32.   On April 14, 2005, Plaintiff returned to work. Upon his return, Plaintiff was
subjected to harassment and embarrassment by Silberman such that he became ill
for two days. Specifically, Silberman stormed into Plaintiff's classroom for an
unannounced observation. Almost immediately after she left the room, Silberman
had her secretary deliver a note to Plaintiff in front of his class. To the best of
Plaintiff's knowledge, other non-disabled teachers who had not opposed
discriminatory practices have not been subjected to similar conduct.

33.   In April 2005, Plaintiff complained to both Silberman and Labella, in writing and
in conversation, about being harassed by them because of his repeated requests
for reasonable accommodations. For the remainder of the 2005 spring semester,

7

as a result of Plaintiff's complaints, Silberman and Labella subjected Plaintiff to retaliation. This retaliation includes but is not limited to the following:

a.   Over-scrutinizing Plaintiff's teaching and grading methods when, upon information and belief, Plaintiff's counterparts who were outside of his protected class were not subjected to this over-scrutiny.

b.   Improperly disciplining Plaintiff.

c.   Inaccurately giving Plaintiff his first unsatisfactory ("U") annual review rating.

34.   From approximately mid-September 2005 to mid-November 2005, Plaintiff suffered an MS attack. This attack was brought on by the excessive heat and humidity in Plaintiff's classroom.

35.   By letter dated November 14, 2005, Plaintiff again requested an air conditioned classroom on the first floor to accommodate his disability.

36.   Plaintiff submitted to Labella a note from his neurologist, dated November 15, 2005, which states that "[Plaintiff] is diagnosed with MS and absolutely needs an air conditioned classroom on the first floor at all times." This request for a reasonable accommodation was denied.

8

37.     From January 9, 2006 through January 16, 2006, Plaintiff suffered from MS
        related acute vertigo. During this time, Plaintiff used all of his banked sick days.
        In or around January 17, 2006, when Plaintiff returned to work, he asked the
        payroll secretary about forms for the Family Medical Leave Act ("FMLA").
        Additionally, Plaintiff requested a form to borrow sick days.[1]

38.     In January 2006, Plaintiff was reassigned to a substitute teaching position.  Prior
        to this assignment, Plaintiff has never been assigned a substitute teaching
        position.  In fact, to the best of his knowledge, no tenured educator with over 25
        years experience was ever involuntarily assigned to such a position.

39.     Plaintiff asked Labella why he was reassigned to a substitute teaching position.
        Labella explained that it was because Plaintiff requested the FMLA forms.  This
        substitute teaching assignment further exacerbated Plaintiff's MS.  Not only did
        Defendants fail to grant Plaintiff's reasonable requests for accommodations, but
        Plaintiff was required to walk throughout the building as he went to different
        classrooms every period, which further aggravated his disability.

40.     Additionally, in January 2006, Plaintiff was involuntarily removed from
        Defendant's direct deposit program.  Plaintiff was informed this occurred as a
        result of a school policy, stating that a teacher, who no longer has sick days

_____

[1] Borrowing sick days refers to the practice of taking sick days from future semesters and
having them available to a teacher during the current semester.

banked, is ineligible for direct deposit. Plaintiff has never heard of such a policy, and has been unable to find such a policy on the DOE's website. Therefore, Plaintiff filled out a new direct deposit form and received one direct deposit (for the pay period April 16 though April 30, 2006). Thereafter, however, Plaintiff again received his pay check via regular mail.

41.   On March 13, 2006, in an effort to harass Plaintiff, Silberman instructed Paul Heymont ("Heymont"), an assistant principal, to check in on all of Plaintiff's classes. Heymont is not Plaintiff's regular supervisor and no observations were scheduled for that day. To the best of Plaintiff's knowledge, no other teachers were subjected to such unannounced observations.

42.   On May 5, 2006, Plaintiff fainted during class. He told Dan Albetta ("Albetta"), the security coordinator, that his MS and the heat in the room caused him to faint. Additionally, Plaintiff stated that his numerous requests for an air conditioned room were all denied.

43.   On May 10, 2006, Silberman talked to Plaintiff about two allegations of Plaintiff sleeping during class. Plaintiff explained that due to his disability, the heat caused him to become fatigued and loose consciousness. Furthermore, Plaintiff reminded Silberman that his requests for an air conditioned room were repeatedly denied.

44.    In June 2006, Silberman inaccurately assigned Plaintiff his second U rating for his
       annual review.

45.    By letter dated June 28, 2006, Silberman asked for Plaintiff to be medically
       examined to determine his fitness for work because of the two occasions where
       Plaintiff was believed to be sleeping.  At the end of the letter, Silberman stated
       that "[a] TAC has been requested for [Plaintiff]."  A "TAC" refers to a specific
       conference Silberman must request if she wishes to discipline Plaintiff.

46.    As a direct and proximate result of the aforementioned discrimination and/or
       retaliation, Plaintiff has suffered loss of earnings, accrued benefits, in addition to
       suffering great pain, humiliation, as well as physical and emotional damages.

## CLAIMS FOR RELIEF

47.    Throughout his tenure at K610, Plaintiff consistently requested an early teaching
       schedule, and an air conditioned classroom on the first floor.  Until Plaintiff filed
       a complaint with the EEOC in 2002, none of these requests were granted.  Since
       then, though Plaintiff has been granted requests for an early teaching schedule,
       almost every semester, Plaintiff has to affirmatively request an early teaching
       schedule twice before it is granted.  Furthermore, despite complaining about the
       heat in his classroom on an almost daily basis, Plaintiff's requests for an air
       conditioned room on the first floor have consistently been denied.  Additionally,

while Plaintiff has been assigned a paraprofessional occasionally, his requests for a paraprofessional for every class have been denied.

48. Upon information and belief, Defendants are subjecting Plaintiff to this harassment, discrimination, and retaliation due to Plaintiff's disability, perceived disability, requests for reasonable accommodations, requests for information regarding the FMLA, and/or his opposition to discriminatory practices.

49. These actions are in violation of 29 U.S.C. §2611, *et seq.*, the New York State Executive Law, Human Rights Law, §290, *et. seq.*, and Title 8 of the New York City Administrative Code under the New York City Human Rights Law.

50. The individual Defendants, aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct in violation of 29 U.S.C. §2611, *et seq.*, New York State Executive Law, Human Rights Law, § 296(6) and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

## Retaliation

51. The instant action was filed on August 16, 2006, Defendant DOE signed a waiver of service form on October 26, 2006, Defendant Silberman signed a waiver of service on October 30, 2006, and Defendant Labella signed a waiver of service on November 15, 2006.

52.    Shortly thereafter, on December 20, 2006, charges were brought against plaintiff pursuant to Education Law Section 3020-a. Said charges raise incidents that allegedly occurred as far back as February 2005. Given the timing of these events and the fact the charges are fabrications and/or gross exaggerations taken out of context, it is clear that the charges were initiated, in part, in retaliation for plaintiff's opposition to discriminatory practices and his filing of the instant action.

WHEREFORE, Plaintiff demands judgment against Defendants, where applicable, for all compensatory, emotional, physical, liquidated, and punitive damages (where applicable), lost pay, front pay, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated:    Carle Place, New York
          March 22, 2007

Respectfully Submitted,

LEEDS MORELLI & BROWN, PC
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

Rick Ostrove (RO-7248)

13